IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN DENHAM, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ALABAMA STATE UNIVERSITY, )<br>)<br>    Defendant. ) | Case No. 2:22-cv-185-SMD |

## **OPINION & ORDER**

Plaintiff Dr. Susan Denham ("Dr. Denham") asserts that her former employer, Defendant Alabama State University ("ASU"), discriminated against her based on her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Before the Court is ASU's Motion for Summary Judgment. Mot. (Doc. 20). For the following reasons, ASU's motion is granted, and Dr. Denham's claims are dismissed with prejudice.

**I.     JURISDICTION**

Dr. Denham's complaint alleges violations of Title VII, which is a federal statute. As such, this case presents a federal question within this Court's original subject-matter jurisdiction under 28 U.S.C. § 1331.

**II.    UNDISPUTED MATERIAL FACTS**

Dr. Denham, a White female, began her career as an Instructor of Occupational Therapy in ASU's College of Health Sciences ("COHS") in 1998. Notice of Employment

(Doc. 22-1) p. 1. Over the course of her employment with ASU, Dr. Denham was promoted to professor and received academic tenure. Letters (Docs. 22-5; 22-6). Dr. Denham has a Bachelor of Science in Occupational Therapy, a Master's of Science in Human Resources Management, and a Doctorate in Educational Leadership, Policy and Law. Denham CV (Doc. 23-2) p. 1. She has been a licensed occupational therapist since 1990 and has contracted with at least five facilities since that time to provide occupational therapy services. *Id*. at 2-4. While at ASU, Dr. Denham served on numerous committees, was a finalist for teaching and faculty awards, and is a member of multiple scientific and professional societies. *Id*. at 4, 7-12. She retired from ASU in 2022. Denham Depo. (Doc. 22-14) pp. 18-19.

In 2018, ASU began a search for the position of Dean of COHS. Pettis Aff. (Doc. 22-9) pp. 1-2. ASU formed a search committee to review and interview applicants for the position. *Id*. Dr. Dartell Treadwell ("Dr. Treadwell"), a Black male, applied for the position and was interviewed by the committee. *Id*. Dr. Treadwell has a Doctorate in Physical Therapy and a Master's in Public Service Management. Treadwell Resume (Doc. 23-3) p. 2. Throughout his career, Dr. Treadwell has managed acute inpatient hospital, geri-psych, and outpatient departments; supervised nine nursing facilities with a team of eighty therapists; built, owned, and operated a contract home health service business offering physical and occupational therapy; and served as an assistant professor for one year at Arkansas State University. *Id*. at 1-2. Dr. Treadwell was not selected for the position of COHS dean. Pettis Aff. (Doc. 22-9) p. 2.

Around the same time that ASU was searching for the COHS Dean, there was a vacancy for the position of Associate Dean of the COHS. Assoc. Dean Posting (Doc. 22-10). Dr. Treadwell and Dr. Denham both applied for the position. The posting for the Associate Dean job set forth two minimum qualifications:

> (1) An earned doctorate from an accredited institution which includes a distinguished academic record in one of the fields of the College, or related health sciences/allied health discipline;
>
> (2) Experience and credentials to qualify for the rank of associate professor . . . in one of the College's academic departments[.]

*Id*.

ASU's Faculty Handbook sets forth the "experience and credentials" necessary to qualify for the rank of associate professor. Specifically, the Handbook states that an associate professor must have "[f]ive academic years of successful teaching experience at an accredited college/university," three years of which "must have been at the rank of assistant professor[.]" ASU Handbook (Doc. 22-17) pp. 2, 3. The Handbook, however, provides several means by which an employee may rank as an associate professor without having the required teaching experience. These exceptions include, in relevant part:

> . . .
>
> B. Upon recommendation of the Provost and Vice President for Academic Affairs, the president may recommend to the Board of Trustees the assignment of academic rank for a new member of the faculty who serves in a combination of teaching and administrative roles.
>
> C. Upon recommendation of the dean of the college involved and the Provost and Vice President for Academic Affairs, the president may recommend to the Board of Trustees the assignment of academic rank for a new member of the faculty solely on the basis of extraordinary and distinguished national service to the teaching field.

3

*Id.* at 3-4.

The same search committee that reviewed and interviewed candidates for the Dean position reviewed and interviewed the candidates for the Associate Dean position. Thomas[1] Depo. (Doc. 22-7) pp. 11-12. The committee interviewed Dr. Denham but did not re-interview Dr. Treadwell because they had recently interviewed him for the Dean position. *Id.* at 14-15, 39. The committed used the same questions to interview Dr. Denham for the Associate Dean position as it used to interview Dr. Treadwell for the Dean position. *Id.* at 94. The committee recommended that Dr. Treadwell be hired as Associate Dean and forwarded their recommendation to the Office of Academic Affairs and its Provost/Vice President, Dr. Carl Pettis. *Id.* at 21-22; Pettis Aff. (Doc. 22-9) p. 2.

Dr. Pettis, who is a Black male, interviewed Dr. Treadwell and Dr. Denham and reviewed their applications for the Associate Dean position. Pettis Aff. (Doc. 22-9) pp. 1-2. As to their interviews, Dr. Pettis found that Dr. Treadwell performed better than Dr. Denham because he brought a lot of "energy" and spoke with "passion" in the interview. *Id.* at 2-3; Pettis Depo. (Doc. 22-12) pp. 59, 78-79, 43-44, 48, 61-65. As to their applications, Dr. Pettis acknowledged that Dr. Treadwell did not have five academic years of successful teaching experience at an accredited college/university or three years of teaching experience at the rank of assistant professor. Pettis Depo. (Doc. 22-12) pp. 42-43, 84. But Dr. Pettis believed Dr. Treadwell was nonetheless qualified for the Associate Dean

---

[1] Dr. Christine Thomas was the chair of the search committee for COHS's Dean and Associate Dean positions. Thomas Depo (Doc. 22-7) pp. 8-9.

position based on the Handbook's exceptions. *Id*. at 88-93. Specifically, Dr. Pettis felt that Dr. Treadwell's clinical work as a physical therapist constituted "extraordinary and distinguished national service to the teaching field" and that, as Provost, he could recommend that Dr. Treadwell be assigned the rank of associate professor because he would be serving in a combination of teaching and administrative duties. *Id*. at 96-99.

Dr. Pettis recommended that Dr. Treadwell be hired as Associate Dean and forwarded his recommendation to ASU President Dr. Quinton Ross ("President Ross"). *Id*. at 12, 44; Pettis Aff. (Doc. 22-9). President Ross accepted Dr. Pettis's recommendation and submitted it to ASU's Board of Trustees, who approved the recommendation.[2] Ross Depo. (Doc. 22-13) p. 7; Pettis Aff. (Doc. 9).

### III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[2] Dr. Denham advances a cat's paw theory in this case. The Eleventh Circuit recognizes the cat's paw theory whereby the unlawful intent by a person involved in the decision-making process is transferred to the decision-maker who has no such intent. *See, e.g. Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999). Here, Dr. Denham contends that Dr. Pettis was the "proximate cause" of ASU's Board's decision to hire Dr. Treadwell. Resp. (Doc. 24) pp. 12-14. ASU does not contest that the cat's paw theory applies. *See generally* Reply (Doc. 25).

5

To survive summary judgment, a non-movant must assert facts that make a sufficient showing on every essential element of her case on which she bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Unsupported conclusions, factual allegations, and allegations based on speculation are insufficient to create a genuine issue of material fact. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). In reviewing a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

**IV.    DISCUSSION**

Dr. Denham claims that ASU failed to promote her to the Associate Dean position because of her race and/or sex in violation of Title VII. Dr. Denham does not provide direct evidence of race or sex discrimination; therefore, she seeks to prove her case through (1) the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), (2) the "convincing mosaic" standard as developed under *Smith v. Lockheed-Martin Corporation*, 644 F.3d 1321 (11th Cir. 2011), and (3) a mixed-motive framework under 42 U.S.C. § 2000e-2(m). Resp. (Doc. 24) pp. 11-12. The undersigned will address each method of proof in turn.

**A.    *McDonnell Douglas* Framework**

To prevail on a failure to promote claim under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she

belongs to a protected group; (2) she sought and was qualified for the position that the employer was attempting to fill; (3) despite her qualifications she was rejected; and (4) the position was filled with a person outside of her protected group. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id*. at 1528.

Should a defendant meet this burden, the plaintiff must then demonstrate that the defendant's proffered reason for its action was merely a pretext to mask retaliation. *Id.* Put another way, the "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the [defendant's] decision was not the real reason?" *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir.2002). A plaintiff may establish pretext by producing evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2004) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotation marks omitted). Importantly, though, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason

was false, and that discrimination was the real reason." *Springer*, 509 F.3d at 1348-49 (citing *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

### 1. Dr. Denham has set forth a prima facie case of race and sex discrimination.

Dr. Denham, a White female, is a member of a protected class for both her sex and race. She applied for the Associate Dean position and was qualified for the same; she was rejected for the position despite those qualifications; and the position was filled by a Black male—i.e., someone outside of Dr. Denham's protected groups. Thus, Dr. Denham has established prima facie cases of race and sex discrimination.

### 2. ASU has proffered a legitimate, non-discriminatory reason for its employment decision.

ASU contends that it hired Dr. Treadwell instead of Dr. Denham because Dr. Treadwell interviewed better than Dr. Denham and because he possessed the clinical experience ASU sought for the position. Mot. (Doc. 21) p. 8; Reply (Doc. 25) p. 1. These are legitimate, non-discriminatory reasons for hiring Dr. Treadwell as Associate Dean.[3] Therefore, ASU has met its burden to produce evidence that its employment decision was not discriminatory.

### 3. Dr. Denham has not shown that ASU's legitimate, non-discriminatory reasons for its employment decision are pretext for race or sex discrimination.

Dr. Denham argues that she can show that ASU's proffered reasons for hiring Dr. Treadwell are a pretext for discrimination because (1) she was clearly more qualified for

---

[3] *See Fraser v. J.C. Penney, Corp.*, 733 F. App'x 969, 977 (11th Cir. 2018) (holding that interview performance is a legitimate, non-discriminatory reason upon which to base an employment decision).

8

the position than Dr. Treadwell, whom she claims did not meet the minimum requirements of the job posting, and (2) Dr. Pettis's subjective reasons for choosing Dr. Treadwell over her—his stronger interview performance and his clinical work—are unsupported and could reasonably be disbelieved. Resp. (Doc. 24) pp. 18-20. The Court examines each argument in turn.

### a. Whether Dr. Denham was more qualified than Dr. Treadwell for the Associate Dean position.

Dr. Denham argues that she can show that ASU's proffered reasons for hiring Dr. Treadwell are pretext for discrimination because she is clearly more qualified than Dr. Treadwell for the Associate Dean position. Resp. (Doc. 24) pp. 18-19. In support of this argument, Dr. Denham claims that Dr. Treadwell, who had only one year of teaching experience, did not meet the minimum teaching requirements to qualify for the position per the job posting. *Id*.

In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that [she] was better qualified than the [person] who received the position [she] coveted." *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000) (citing *Combs*, 106 F.3d. at 1543). Instead, a plaintiff must show that the disparities between the successful applicant's and her own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper*, 390 F.3d at 732 (citation omitted); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 453 (2006) (approving of this language from *Cooper*). In other words, a plaintiff must show that the disparities in

9

qualifications "jump off the page and slap [you] in the face." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000). Evidence that a successful candidate does not meet the minimum requirements of a job posting can raise an inference—but is not determinative—of unlawful discrimination. *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1108 (11th Cir. 2001) ("[T]he fact that [the employer] promoted . . . an employee who was unqualified by [the employer's] own criteria over [an employee who was so qualified] supports an inference of discrimination.").[4]

Here, the Associate Dean job posting required a qualified candidate to possess "[e]xperience and credentials to qualify for the rank of associate professor . . . in one of the College's academic departments[.]" Assoc. Dean Posting (Doc. 22-10). As previously explained, under ASU's Faculty Handbook, a faculty member qualifies for the rank of associate professor by having, *inter alia*, five years of teaching experience at an accredited college or university with at least three of those years at the rank of assistant professor. Handbook (Doc. 22-17) pp. 3-4. It is undisputed that Dr. Treadwell, who had one year of teaching experience as an assistant professor, did not qualify as an associate professor under this provision of the Handbook.

---

[4] *See also Alexander*, 207 F.3d at 1340 (observing "that evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting plaintiff was pretextual"); *Vessels v. Atlanta Independent Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) ("Though not determinative, [the employer's] choice of the [selected candidate] over [the unselected candidate] when [the employer's] own regulations appear to favor someone of [the unselected candidate's] qualifications contributes to [the] showing of pretext."); *Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir. 1998) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

Importantly, however, ASU's policies permitted Dr. Treadwell to qualify for the rank of associate professor under certain exceptions. One exception allows for a new faculty member "who serves in a combination of teaching and administrative roles" to be assigned the rank of associate professor. *Id*. at 3-5. Another exception allows for the assignment of rank based on extraordinary and distinguished national service in the teaching field. *Id*. Dr. Pettis testified that he knew Dr. Treadwell did not have five years of teaching experience, but he nonetheless considered him qualified for the Associate Dean position because he believed those exceptions applied. Pettis Depo. (Doc. 22-12) pp. 95-97; Pettis Affid. (Doc. 22-9).

The facts of this case are similar to those considered by the United States District Court for the Middle District of Georgia in *Jolivette v. City of Americus, Georgia*. In that case, Roderick Jolivette ("Jolivette"), a Black male, applied for the position of fire chief for the City of Americus (the "City"). *Jolivette*, 2018 WL 6579160, at *1 (M.D. Ga. Dec. 13, 2018). The fire chief job posting required a bachelor's degree in fire science, public administration, or a closely related field. *Id*. The candidate selected for the position, Roger Bivins ("Bivins"), a White male, did not hold such a degree, while Jolivette did. *Id*.

Despite the disparity in their qualifications, the court found that Jolivette had not shown that the City's legitimate nondiscriminatory reasons for hiring Bivins were pretext. In reaching this conclusion, the court noted that Bivins's lack of education was "certainly [a] factor to consider in the pretext calculus," but did not outweigh other factors—including Bivins's experience, qualifications, intimate knowledge of the department and its personnel, enthusiasm for the job, high interview scores, and future plans for the

department—that the City valued in making its employment decision. *Id*. Thus, the court declined to act "as a super-personnel department," *id*., and the Eleventh Circuit upheld the court's decision, *Jolivette v. City of Americus, Ga*., 786 F. App'x 234, 236 (11th Cir. 2019).[5]

Like Jolivette, Dr. Denham attempts to show that she was more qualified than Dr. Treadwell because he did not meet the job posting's minimum requirements for the Associate Dean position. But while Dr. Treadwell did not qualify for the position per his teaching experience, ASU's written policies permitted alternative routes to rank Dr. Treadwell as an associate professor. Dr. Denham has produced no evidence to dispute that Dr. Pettis relied on these exceptions to qualify Dr. Treadwell for the position. And more importantly, she has provided no evidence that Dr. Pettis's decision to rely on the exceptions to qualify Dr. Treadwell was motivated by sex or race. Instead, Dr. Denham merely quarrels with the wisdom of Dr. Pettis's determination that Dr. Treadwell qualified for the position under an exception to the teaching requirement. This is insufficient to establish pretext. *See Mahone v. BBG Specialty Foods*, 2018 WL 1526336, at \*6 (M.D. Ala. Mar. 28, 2018) ("A quarrel with the wisdom of an employer's decision is not sufficient to show pretext; rather the plaintiff must submit evidence of discrimination.").[6] Without

---

[5] In affirming the district court's decision, the Eleventh Circuit noted that "[a]lthough Jolivette possessed a bachelor's degree, as required in the job posting, the City [of Americus's] policies weighed equally candidates who possessed an 'equivalent combination of education, training, and experience.'" *Jolivette*, 786 F. App'x at 236.

[6] *See also Conner v. Lafarge N. Am., Inc*., 343 F. App'x 537, 541-42 (11th Cir. 2009) (finding that the plaintiff failed to show pretext where the promoted candidate did not meet the job posting's listed qualifications but where the employer, following its company policy, chose to treat internal candidate status

more, the Court will not say that the disparities between Dr. Treadwell's and Dr. Denham's qualifications jump off the page and slap you in the face. Thus, the Court will not disrupt ASU's hiring decision because it relied on an exception to find Dr. Treadwell qualified for the Associate Dean position. *See Jolivette*, 786 F. App'x at 236 (declining to disrupt the City's employment decision despite the fact that Bivins had less experience and did not meet the job posting requirements).

### b. Whether Dr. Pettis's subjective reasons for choosing Dr. Treadwell show pretext.

Additionally, Dr. Denham argues that she has shown pretext because Dr. Pettis's subjective reasons for choosing Dr. Treadwell—his stronger interview performance and his extraordinary clinical work—are unsupported and could reasonably be disbelieved. The Eleventh Circuit instructs that, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a . . . promotion decision on purely subjective criteria will rarely, if ever, prove pretext[.]" *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001). "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id.* at 1186. When supported by a clear and reasonably specific factual basis, subjective reasons must be directly refuted to show pretext. *Chapman v. AI Transp.*, 229 F.3d 1012, 1033-34, 1036

---

as equivalent to the qualifications listed in the job posting); *Edmonson v. Thompson*, 2021 WL 4326993, at *5 (N.D. Ala. Sept. 23, 2021) ("Assuming arguendo that [the employer] mistakenly found that [the successful candidate met the minimum qualifications of the job posting], showing that an employment decision was a mistake is alone insufficient" to show pretext.).

13

(11th Cir. 2000). That is, a plaintiff must "show not just that [the employer's] proffered reasons for [failing to promote her] were ill founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Dr. Pettis testified that Dr. Treadwell's interview was superior to Dr. Denham's because Dr. Treadwell "brought a lot of energy" to the interview. (Doc. 22-12) p. 44, 60-61. When questioned as to what this meant, Dr. Pettis stated that Dr. Treadwell spoke with "passion," particularly with respect to the role he could play as Associate Dean. *Id*. at 61-62. On the other hand, Dr. Pettis testified that Dr. Denham did not make the same impression during her interview. *Id*. at 45. Specifically, Dr. Pettis noted that, when questioned why she was applying for the Associate Dean position, Dr. Denham responded: "why not apply?" *Id*.

Dr. Pettis's testimony provides a reasonably specific factual basis upon which he concluded that Dr. Treadwell outperformed Dr. Denham in the interview.[7] Dr. Denham has not produced any evidence directly refuting Dr. Pettis's conclusion that Dr. Treadwell communicated a sense of energy and passion during his interview. As such, Dr. Denham has failed to show that Dr. Pettis's subjective opinion that Dr. Treadwell performed better in the interview is pretext.

---

[7] *See Springer*, 509 F.3d at 1349-50 (finding that there was a sufficiently specific factual basis for the defendant's opinion that the plaintiff was the more qualified candidate for the promotion based on the decision-maker's testimony describing her first-hand experience with the candidates); *but see Dove v. Flagler Cnty. Sch. Bd*., 2022 WL 16923562, at *5 (M.D. Fla. Nov. 14, 2022) (finding that the employer did not provide a clear and reasonably specific basis that the plaintiff was less qualified compared to other candidates by simply stating that the plaintiff "was not the best qualified candidate").

Dr. Denham similarly fails to show that Dr. Pettis's subjective opinion that Dr. Treadwell's clinical experience was more desirable than Dr. Denham's is pretext. Dr. Treadwell had approximately fifteen years of clinical experience when he was hired by ASU. Treadwell Resume (Doc. 23-3) pp. 1-2. Dr. Denham, on the other hand, had twenty-nine years of experience. Denham CV (Doc. 23-2) pp. 1-4. Even though Dr. Denham had almost twice as much clinical experience as Dr. Treadwell, Dr. Pettis testified that Dr. Treadwell possessed the type of experience that he believed would be valuable to the COHS students participating in their required clinical experiences. Pettis Depo. (Doc. 22-12) pp. 48-54.

Dr. Denham has not argued that Dr. Treadwell does not possess valuable clinical experience; that his experience is subpar to hers; or that she brings the same type of experience to the table that Dr. Pettis found valuable in Dr. Treadwell. Instead, Dr. Denham merely contends that the disparity between the years of clinical experience she and Dr. Treadwell possess shows pretext. Resp. (Doc. 24) p. 20. But the length and amount of Dr. Denham's clinical experience does not make her experience more valuable than Dr. Treadwell's. *See Edmonson*, 2021 WL 4326993, at *5 (finding unpersuasive the plaintiff's argument that she was generally more qualified than the selected candidate because she had "twice as much relevant technical experience"). Without more, Dr. Denham has not shown that Dr. Pettis's subjective opinion that Dr. Treadwell's experience made him better suited for the Associate Dean position is pretext for discrimination.

### c. Conclusion

Dr. Denham has failed to create a genuine issue of material fact with respect to whether ASU's legitimate non-discriminatory reasons for its decision to hire Dr. Treadwell as Associate Dean were pretext for either race or sex discrimination. Despite Dr. Denham's attempt to frame it as such, this is not a case where an unqualified applicant was chosen over a qualified applicant. True, Dr. Denham possessed the teaching experience required to rank as an associate professor and Dr. Treadwell did not. However, ASU's policies explicitly provided exceptions for affording a new hire—like Dr. Treadwell—the status of associate professor. Dr. Denham has not shown that Dr. Pettis's reliance on these exceptions was false, unfounded, or otherwise pretextual.

Neither has Dr. Denham produced sufficient evidence to show that Dr. Pettis's subjective reasons for hiring Dr. Treadwell could not reasonably be believed. Indeed, Dr. Denham has not produced evidence that Dr. Treadwell did not convey energy and passion during his interview. Similarly, she has not produced evidence that Dr. Treadwell's clinical experience was not particularly desirable to Dr. Pettis for the Associate Dean position.

Without any other evidence that Dr. Pettis's decision was based on race or sex, Dr. Denham has not shown that ASU's proffered reasons for hiring Dr. Treadwell are pretext for discrimination. Therefore, ASU is entitled to summary judgment on Dr. Denham's sex and race discrimination claims.

### B. Convincing Mosaic

Establishing the elements of the *McDonnell Douglas* framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion

in an employment discrimination case." *Smith*, 644 F.3d at 1328. Rather, a plaintiff will survive summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Id.* A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Id.* A "convincing mosaic" may be shown by evidence that demonstrates, among other things, (1) "suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Dr. Denham argues that her discrimination claims should survive summary judgment under the convincing mosaic standard. In support of her argument, she once again contends that she was better qualified than Dr. Treadwell and that Dr. Pettis's articulated reasons for choosing Dr. Treadwell were unfounded and could reasonably be disbelieved. Resp. (Doc. 24) pp. 20-22. But as explained in the previous section, these arguments do not establish pretext. Further, Dr. Denham has not produced evidence of suspicious timing, ambiguous statements, or other evidence from which an inference of discriminatory intent might be drawn. Nor has she produced evidence that ASU systematically treats Black people better than White people, or men better than women. As such, when examined under the convincing mosaic standard, the Court finds that Dr. Denham has failed to create a triable issue of fact as to her discrimination claims.

### C. Mixed-Motive Theory

Discrimination claims brought under Title VII are typically categorized as either mixed-motive or single-motive claims. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). A mixed-motive claim is based on adverse action taken against an employee that was motivated by both a legal and an illegal reason. *Id.* at 1235. An employee can succeed on a mixed-motive claim by showing—via direct or circumstantial evidence—that illegal bias, such as bias based on race or sex, "was a motivating factor for" an adverse employment action, "even though other factors also motivated" the action. 42 U.S.C. § 2000e–2(m). Notably, under a mixed-motive theory, a plaintiff is not required to show pretext. *Quigg*, 814 F.3d at 1235.

To show that ASU's hiring of Dr. Treadwell was motivated by an illegal reason, Dr. Denham again relies on the disparity in qualifications between her and Dr. Treadwell as well as Dr. Pettis's subjective analysis of the candidates' interviews. Resp. (Doc. 24) pp. 23-24. She puts forth no additional evidence that race or sex was a motivating factor for Dr. Pettis's decision to hire Dr. Treadwell. As such, for the reasons discussed previously, the Court finds that Dr. Denham has not created a triable issue of fact as to her discrimination claims under a mixed-motive theory of discrimination.

### V. CONCLUSION

The Court finds that Dr. Denham has failed to put forth sufficient evidence to show that she was not selected as Associate Dean because of her race or sex. Therefore, it is

ORDERED that ASU's Motion for Summary Judgment (Doc. 20) is GRANTED and that Dr. Denham's claims are DISMISSED in their entirety WITH PREJUDICE.

A separate judgment shall issue.

DONE this 28th day of June, 2023.

                                                Stephen M. Doyle
                                                CHIEF U.S. MAGISTRATE JUDGE